IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BROOMALL OPERATING CO. LP** | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-2168 |
| | : | |
| **LINDA J. ELDRIDGE** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                  AUGUST 31, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court are competing motions, *to wit*: Defendant Linda J. Eldridge's ("Defendant" or "Mrs. Eldridge") motion to dismiss the complaint to compel arbitration, filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 10], and Plaintiff Broomall Operating Company LP's ("Plaintiff" or "Broomall") motion to compel arbitration, filed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. [ECF 12]. The issues raised by the parties have been fully briefed and are ripe for disposition.[1] For the reasons set forth below, Broomall's motion to compel arbitration is granted; Mrs. Eldridge's motion to dismiss is denied.

---

[1]  In adjudicating the underlying motions, this Court has also considered Broomall's response to Mrs. Eldridge's motion to dismiss, [ECF 13], Mrs. Eldridge's responses to Broomall's motion to compel, [ECF 14, 15], and Broomall's reply to Mrs. Eldridge's response in opposition to the motion to compel, [ECF 18].

**BACKGROUND**

Broomall is a limited partnership that provides skilled nursing home and rehabilitation services.[2]  On behalf of the Estate of Milton Eldridge ("Mr. Eldridge") (Plaintiff's deceased husband), Mrs. Eldridge filed a wrongful death[3] and survival[4] action against Broomall and thirteen other parties in the Delaware County Court of Common Pleas, alleging, *inter alia*, nursing home abuse, negligence, and breach of fiduciary duty in Mr. Eldridge's nursing home care.  On May 5, 2020, Broomall filed (1) preliminary objections to the state action and sought to enforce an alternative dispute resolution and arbitration agreement allegedly entered into by the parties and (2) simultaneously, the underlying action to compel arbitration and to stay the state proceedings. [ECF 1].  On July 10, 2020, Mrs. Eldridge moved to dismiss the complaint pursuant to the *Colorado River* abstention doctrine and, alternatively, sought allowance for limited discovery related to the agreement underlying Broomall's complaint.  [ECF 4].  This Court denied the motion as related to the abstention doctrine argument and granted Mrs. Eldridge's request for limited discovery.  [ECF 7].

Thereafter, Broomall filed the instant motion to compel arbitration of all of Mrs. Eldridge's claims except for the wrongful death claim.[5]  [ECF 12 at p. 5].  Mrs. Eldridge opposes the motion

---

[2]     For purposes of diversity jurisdiction, Broomall is a citizen of Delaware, Georgia, and Tennessee, and Mrs. Eldridge is a citizen of Pennsylvania.

[3]     The Wrongful Death Act is codified under 42 Pa. Cons. Stat. § 8301.

[4]     The Survival Act is codified under 20 Pa. Cons. Stat. § 3371.

[5]     In her state court complaint, Mrs. Eldridge asserts claims of wrongful death and survival action. The Pennsylvania Superior Court has explained the distinction between survival and wrongful death causes of action as follows:  "The survival action has its genesis in the decedent's injury, not his death.  The recovery of damages stems from the rights of action possessed by the decedent at the time of death. . . .  In contrast, wrongful death is not the deceased's cause of action.  An action for wrongful death may be brought only by specified relatives of the decedent to recover damages on their own behalf, and not as beneficiaries of the estate . . . .  This action is designed only to deal with the economic effect of the decedent's death

and argues that the arbitration agreement at issue is unenforceable and unconscionable. [ECF 15].

The facts relevant to the validity and enforceability of the agreement are set forth below:[6]

> On March 17, 2015, Mr. Eldridge executed a power of attorney designating his wife, Mrs. Eldridge, as his agent. The power of attorney granted Mrs. Eldridge the authority to, *inter alia*, "commence, prosecute, discontinue or defend all actions or other legal proceedings . . . [and] to settle, compromise, or subject to arbitration any debt, demand or other right or matter due to me concerning my estate as my Agent."
>
> On November 6, 2016, Mrs. Eldridge, along with her two sons, met with representatives of Broomall regarding Mr. Eldridge's admission into Broomall's nursing home care and rehabilitation facility (the "Facility"). The meeting lasted approximately twenty minutes. During the meeting, a Broomall representative presented Mrs. Eldridge with various documents and told her that she needed to sign all of the documents before Mr. Eldridge could be admitted to the Facility. Mrs. Eldridge signed an Admission Agreement with Broomall on behalf of Mr. Eldridge and an agreement titled "Agreement for Dispute Resolution Program" ("DRP Agreement"), which a Broomall representative also signed.
>
> Mrs. Eldridge signed the agreements in her capacity as Mr. Eldridge's legal representative pursuant to the previously executed power of attorney. Specifically, the signature page of the DRP Agreement provides: "I am the spouse, responsible party, legal guardian, or power of attorney of the resident and have the authority to sign the agreement on his/her behalf." Mrs. Eldridge signed her name on the line designated for the signature of a "Legal Representative or Family Member as authorized by State law." The DRP Agreement defined "parties" as including "the resident, any and all family members who would have a right to bring a claim in state court on behalf of the resident or the resident's estate, a legal representative, including a power of attorney . . . ."
>
> Under the terms of the DRP Agreement, the signatories agreed to participate in Broomall's Dispute Resolution Program ("DRP"), under which certain claims

---

upon the specified family members. *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 658–59 (Pa. Super. Ct. 2013) (quoting *Frey v. Pa. Elec. Co.*, 607 A.2d 796, 798 (Pa. Super. Ct. 1992)).

Here, the parties agree that the wrongful death claim against Broomall is not subject to the DRP Agreement since Pennsylvania courts have held that an arbitration agreement signed only by a decedent does not bind the decedent's wrongful death beneficiaries, and that such claims should be bifurcated from any survival claims subject to arbitration. *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 495 (Pa. 2016); *Pisano,* 77 A.3d at 660–61.

[6]   The facts set forth herein are drawn from the amended complaint and the exhibits attached to the parties' briefs, including the sworn affidavit of Scott Eldridge, the Eldridges' son. For purposes of this motion to compel, this Court will construe the facts and evidence in the light most favorable to the non-movant (here, Mrs. Eldridge).

3

arising from the Admission Agreement or the resident's stay at or care and services provided by the Facility would be resolved by a three-step process culminating in a decision by an arbitrator. The DRP Agreement provided, in relevant part:

> **AGREEMENT FOR DISPUTE RESOLUTION PROGRAM**
>
> **PLEASE READ CAREFULLY**
>
> * * *
>
> **THIS AGREEMENT IS SUBJECT TO ARBITRATION DISPUTES**
>
> **BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARTIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL AND TO HAVE THE DISPUTE RESOLVED THOUGH VARIOUS STEPS, CULMINATING IN A DECISION BY AN ARBITRATOR**
>
> * * *
>
> YOUR PARTICIPATION IN DRP IS VOLUNTARY. BY SIGNING THIS AGREEMENT, YOU AGREE TO PARTICIPATE IN THE PROGRAM. THIS AGREEMENT MAY BE REVOKED BY SENDING A WRITTEN NOTICE OF REVOCATION WITHIN THIRTY (30) DAYS FROM THE DATE OF ADMISSION OR THE DATE ON WHICH THIS AGREEMENT IS SIGNED, WHICHEVER OCCURS LATER. A DECISION TO REVOKE THIS AGREEMENT WILL IN NO WAY ADVERSELY AFFECT THE RESIDENT'S STATUS AT THE FACILITY. WE WILL NOT REFUSE TO ADMIT, ATTEMPT TO DISCHARGE THE RESIDENT OR TAKE ANY OTHER ADVERSE ACTION AGAINST THE RESIDENT BASED ON A REVOCATION OF THE OPPORTUNITY TO PARTICIPATE IN DRP. . . . YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO CONSULT WITH AN ATTORNEY OF YOUR CHOICE.

The above text appeared on the first page of the DRP Agreement. The DRP Agreement also provided that, as part of the Dispute Resolution Program, "the Facility will pay for ninety percent (90%) of the fees for mediation and arbitration and [the resident] will pay for the remaining ten percent (10%)."

4

According to the DRP Agreement's terms, electing to participate in the Dispute Resolution Program was voluntary and not a prerequisite for Mr. Eldridge's admission to or continued care at the Facility.

Mr. Eldridge resided at the Facility from the day of admission (November 6, 2016) until January 30, 2018, except for the times when he was hospitalized. Mrs. Eldridge alleges that during his residency, Mr. Eldridge suffered numerous injuries, including "development and deterioration of multiple pressure ulcers, infection, severe sepsis, septic shock, UTI, malnutrition, dehydration, poor hygiene, loss of dignity, disfigurement, severe pain and ultimately death."

**LEGAL STANDARD**

When addressing a motion to compel arbitration, this Court must first determine which standard of review to apply: either the motion to dismiss standard under Rule 12 or the motion for summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resolution, LLC.*, 716 F.3d 764, 771–72 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773–74 (internal citations omitted). Where arbitrability is not apparent on the face of the complaint, "the issue should be judged under the Rule 56 standard." *Id*. Furthermore, where the validity and enforceability of an arbitration agreement is at issue, a court should evaluate the issue under the Rule 56 standard. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co. Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).

Here, arbitrability is not apparent on the face of the amended complaint, and Mrs. Eldridge challenges the validity and enforceability of the DRP Agreement. In addition, by Order dated October 22, 2020, this Court allowed limited discovery on the arbitration agreement. [*See* ECF

7]. Under the circumstances noted, this Court will apply the Rule 56 summary judgment standard in determining the DRP Agreement's validity and enforceability.[7]

When applying the Rule 56 standard to a motion to compel arbitration, a court shall grant the motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A fact is "material" if its existence or non-existence may affect the outcome of litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In applying the Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party" (here, Mrs. Eldridge).  *See Guidotti*, 716 F.3d at 772.

The moving party has the burden of demonstrating "the absence of a genuine issue of material fact" by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322–23.  The non-moving party must then rebut the claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A)–(B).  The non-moving party must show more than "some metaphysical doubt as to the material facts;" rather, the non-moving party must "go beyond the pleadings" and "show that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324.

---

[7] In their respective pleadings, both parties agree that the motion to compel arbitration should be judged under the Rule 56 standard.  As noted, the parties have participated in limited discovery related to the arbitration agreement at issue, and no additional discovery is necessary.

**DISCUSSION**

Broomall moves to compel arbitration of all the claims brought by Mrs. Eldridge in the state court action on behalf of her husband's estate based on the DRP Agreement. In opposing the motion, Mrs. Eldridge argues that (1) there was no "meeting of the minds" among the parties and, thus, no enforceable contract was formed, and (2) the DRP Agreement is procedurally and substantively unconscionable.[8]  In light of the undisputed record evidence, Mrs. Eldridge's arguments are without merit.

The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000).  Section 2, the primary substantive provision of the FAA, provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2).  This provision "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  Section 2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted).

Under the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district

---

[8]  In addition to these two arguments, Mrs. Eldridge also contends that her waiver of her husband's right to a jury trial protected by the Seventh Amendment to the United States Constitution was not knowing, intelligent, and voluntary, as required by *First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001).  However, the United States Court of Appeals for the Third Circuit has held that the heightened "knowing and voluntary" standard under the Seventh Amendment is inconsistent with the FAA and does not apply to arbitration agreements governed by the statute. *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 224 (3d Cir. 2008); *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79 (2000).  Accordingly, because this Court finds that the FAA applies to the DRP Agreement here, it will not address this argument by Mrs. Eldridge.

7

>court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* In so doing, the court "must resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).  If the court determines that the case must be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

Therefore, before compelling arbitration, a court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  Throughout the inquiry, there is a presumption in favor of arbitrability. *Id.* Here, the parties agree that all but Mrs. Eldridge's claim for wrongful death fall within the scope of the DRP Agreement. The parties disagree, however, as to whether a valid agreement to arbitrate exists.  In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).  Under Pennsylvania law, "a contract is formed when there is an offer, an acceptance of that offer and an exchange of consideration." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 434 n.21 (Pa. 2004).

### *Formation of the DRP Agreement*

"Under Pennsylvania law, a valid contract requires that: (1) both parties must manifest an intention to be bound by the agreement; (2) the terms of the agreement must be sufficiently definite; and (3) there must be consideration." *Hudyka v. Sunoco, Inc.*, 474 F. Supp. 2d 712, 716 (E.D. Pa. 2007) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).  The party asserting the existence of the valid contract bears the burden of establishing the elements of the contract formation, consisting of an offer, acceptance, consideration, and a mutual meeting of the minds.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995).  Agreements to arbitrate may only be upheld when it is clear the parties "agreed to arbitrate in clear and unmistakable manner."  *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 287 (Pa. Super. Ct. 2005) (quoting *Emmaus Mun. Augh. v. Eltz*, 204 A.2d 926 (Pa. 1964)).

Mrs. Eldridge argues that the DRP Agreement is an unenforceable contract because there was no "meeting of the minds" or mutual assent among the parties, nor is there "a scintilla of evidence that the parties agreed to arbitrate in a 'clear and unmistakable manner.'" [Def's. Resp., ECF 15 at p. 11].  In support of this argument, Mrs. Eldridge relies on *Quiles*.  This reliance, however, is misguided, as the facts of the instant case and *Quiles* are quite different.  In *Quiles*, an employee alleged that her supervisor pressured her into signing an arbitration agreement by telling her to "just 'f' sign that because I'm going to get in trouble." *Id.* at 287.  The employee in *Quiles* had only a basic command of the English language, had not received a high school diploma, and was not familiar with the term or concept of arbitration.  *Id.* at 284, 287. Though Mrs. Eldridge was evidently stressed when admitting her husband into the nursing home and contends that she did not read the DRP Agreement before she signed it, she had thirty days thereafter to opt out of

9

the agreement without consequences.  Further, there is no indication that Mrs. Eldridge lacked the ability to understand the Agreement.

Mrs. Eldridge further argues the requisite meeting of the minds did not occur because the essential terms of the DRP Agreement were neither discussed nor mentioned during the admission process.  She contends that she did not read the DRP Agreement before signing it, alleging that she was given no opportunity to review it and that Broomall's representatives "rushed [her] through the process."  [Aff. of Scott Eldridge, Ex. A, ECF 15-1 at p. 3].  She further contends that Broomall's representatives never mentioned the words "Arbitration," "Arbitration Agreement," "Dispute Resolution Program," or "Mediation" during the twenty-minute meeting.  [*Id.*].

"For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006).  "Without knowing the terms of the contract, one cannot accept them."  *Hudyka*, 474 F. Supp. 2d at 716–17.  Here, by contrast, the DRP Agreement contained conspicuous, bold language detailing the arbitration terms and explaining that opting into the program was not a condition of Mr. Eldridge's admission to the Facility:  "**THIS AGREEMENT IS SUBJECT TO ARBITRATION DISPUTES** . . . . **BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARTIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL** . . . . YOUR PARTICIPATION IN DRP IS VOLUNTARY."  [DRP Agreement, Ex. 2, ECF 12-4 at p. 1].

Furthermore, as Broomall argues, Mrs. Eldridge's failure to read the DRP Agreement, whose terms were definite and conspicuous, is not sufficient to establish a lack of mutual assent.  Pennsylvania courts have unwaveringly held that failure to read a contract is not a defense to its

enforcement. *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983); *In re Olson's Est.*, 291 A.2d 95, 98 (Pa. 1972) ("[I]n the absence of proof of fraud, 'failure to read is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.'" (citations omitted)); *Schillachi v. Flying Dutchman Motorcycle Club*, 751 F. Supp. 1169, 1175 (E.D. Pa. 1990) ("One who is about to sign a contract has a duty to read that contract first."). In *Clouser v. Golden Gate Nat'l Senior Care, LLC*, a case with a remarkably similar factual background to the instant case, the court rejected the argument that an arbitration agreement was unenforceable because the plaintiff did not read the agreement, as the agreement contained sufficiently definite terms and was supported by consideration, *i.e.*, the agreement by the parties to be bound to arbitrate. 2016 WL 1179214, at *5–6 (W.D. Pa. Mar. 23, 2016).

In sum, this Court finds that Broomall has met its burden in demonstrating the DRP Agreement was executed in accordance with the principles of contract formation under Pennsylvania law. Given its conspicuous language and the lack of any evidence suggesting Mrs. Eldridge was incapable of understanding it, the DRP Agreement is a validly formed contract.

### *Unconscionability*

Mrs. Eldridge also argues the DRP Agreement is unenforceable because it is unconscionable under Pennsylvania contract law. For a contract to be unconscionable, it must be both procedurally and substantively unconscionable. *Gay v. CreditInform*, 511 F.3d 369, 392 (3d Cir. 2008). "Under Pennsylvania law, the test for unconscionability is whether one of the parties lacked a meaningful choice about whether to accept the provision [or contract] in question and the challenged provision or contract unreasonably favor[s] the other party to the contract." *Zumpano v. Omnipoint Commc'ns, Inc.*, 2001 WL 43781, at *5 (E.D. Pa. Jan. 18, 2001) (addition in original).

11

In analyzing these two prongs, the Third Circuit recognizes the Pennsylvania Supreme Court's use of a "sliding-scale approach," so that "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required," and vice-versa. *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 125 n.12 (Pa. 2007)).

Procedural unconscionability concerns the process by which the parties entered into the contract. The Pennsylvania Supreme Court has defined it as the "absence of meaningful choice on the part of one of the parties." *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981). Mrs. Eldridge argues that the DRP Agreement is procedurally unconscionable for three reasons: (1) she was not aware of the presence of the DRP Agreement within the admission paperwork, (2) she was explicitly told by Broomall's personnel that all paperwork "***had*** to be signed" for her husband to be admitted and receive care, and (3) there was "[n]othing even remotely resembling [a] discussion" regarding arbitration before she signed the form.[9] [Def's. Resp., ECF 15 at p. 17]. Mrs. Eldridge's argument is unpersuasive.

As noted, the failure to read a contract is not a defense to its enforcement. *Caparra v. Maggiano's Inc.*, 2015 WL 5144030, at *6 (E.D. Pa. Sept. 1, 2015) ("Under Pennsylvania law, '[c]ontracting parties are normally bound by their agreements, without regard to whether the terms

---

[9] Mrs. Eldridge cites *Phoenix Baptist Hosp. & Med. Ctr., Inc., v. Aiken*, 877 P.2d 1345, 1349 (Ariz. Ct. App. 1994), wherein the Arizona Court of Appeals considered the fact that the plaintiff "hurriedly signed the preprinted agreement" in order to obtain medical care for his wife in finding the agreement was procedurally unconscionable. The court emphasized the fact that the agreement was signed during an "emergency medical crisis," holding that "given these circumstances, the trier of fact could conclude either that [the respondent] did not understand the implications of the agreement, or that he felt he had no choice but to immediately sign the preprinted form." *Id*. While Scott Eldridge explains that admitting Mr. Eldridge to the Facility was "an extremely stressful and emotional time" for his family, [Aff. of Scott Eldridge, Ex. A, ECF 15-1 at p. 3], there is no evidence suggesting Mr. Eldridge's situation was analogous to that of the hospital patient in *Phoenix Baptist*. Furthermore, this Court must apply Pennsylvania law, which does not support a finding of procedural unconscionability, to the instant motion.

thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains.'") (quoting *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990)). Mrs. Eldridge concedes that she did not read the DRP Agreement before signing it but argues that Broomall's representative did not explain the agreement to her nor mention anything about arbitration. Mrs. Eldridge's son recalls that admitting Mr. Eldridge to the Facility was "an extremely stressful and emotional time" for the whole family and that he, his brother, and Mrs. Eldridge "trusted the Facility[] personnel's representation that all presented documents were required to be signed" prior to Mr. Eldridge's admission. [Aff. of Scott Eldridge, Ex. A, ECF 15-1 at p. 3]. He "distinctly recall[s]" the Facility's representative telling Mrs. Eldridge that she "had to sign all of the presented documents" and recalls that the documents were not described, discussed, or explained to the family. [*Id.* at p. 2] (emphasis in original). One Facility representative told the family, "[D]on't worry, your father is in good hands." [*Id.* at p. 3]. This argument is unconvincing and, further, has been rejected by other courts. *See, e.g.*, *Clouser*, 2016 WL 1179214, at *6 ("Plaintiff's argument that Ms. McCoy did not explain these terms to her and that she did not read the ADR Agreement is unpersuasive."); *Patel v. Am. Safety Indem. Co.*, 2016 WL 520994 (W.D. Pa. Feb. 10, 2016) (explaining that the plaintiff was "expected to have read the contract as any failure to read the contract is an unavailing excuse").

In the nursing home context, Pennsylvania courts have similarly rejected arguments that arbitration agreements were unenforceable simply because the signatories did not read them. *See, e.g.*, *Garcia v. HCR ManorCare, LLC*, 2016 WL 127514 (Pa. Super. Ct. Jan. 12, 2016) (explaining that "[e]ven if Husband, as the trial court suggests, did not read the Agreement because he 'simply took [the admission's staff] word about what he was supposed to sign . . . and had just agreed to sign whatever document had been placed before him[,]'" such an argument would not afford the

13

husband relief); *Skywark v. Healthbridge Mgmt., LLC*, 2015 WL 13621062 (W.D. Pa. Sept. 25, 2015) (rejecting plaintiff's argument that she was not afforded an opportunity by admissions staff to review the subject arbitration agreement). Here, the phrases "ARBITRATION," "DISPUTE RESOLUTION PROGRAM," and "THE PARTIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR JURY TRIAL" appear clearly and conspicuously, in bold print, on the first page of the DRP Agreement. [DRP Agreement, Ex. 2, ECF 12-4 at p. 1]; *see Glover ex rel. Glover v. Darway Elder Care Rehab. Ctr.*, 2014 WL 931459, at *9 (M.D. Pa. Feb. 4, 2014), *report and recommendation adopted*, 2014 WL 931470 (M.D. Pa. Mar. 10, 2014) ("[A]ny subjective feelings that the plaintiff now claims that Audrey Glover felt when signing a voluntary agreement—even assuming they were truly felt—are sharply undercut by the plain, and even emphasized language of the agreement itself."). Therefore, the DRP Agreement is not procedurally unconscionable on the grounds that Mrs. Eldridge did not read it.

Mrs. Eldridge also argues the DRP Agreement is procedurally unconscionable because it is a contract of adhesion. Procedural unconscionability is generally found in contracts of adhesion. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003); *McNulty v. H & R Block, Inc.*, 843 A.2d 1267, 1273 n.6 (Pa. Super. Ct. 2004). A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a "take-it-or-leave-it" basis. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004); *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538 (E.D. Pa. 2006). The touchstone of the analysis is whether the party challenging the agreement had any meaningful choice regarding acceptance of its provisions. *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 886 (Pa. Super. Ct. 2006); *see also Hopkins v. NewDay Fin., LLC*, 2008 WL 2654635, at *2 (E.D. Pa. June 30, 2008).

Here, Mrs. Eldridge is incorrect in classifying the DRP Agreement as a contract of adhesion. Critically, the DRP Agreement was voluntary and not a condition of Mr. Eldridge's admission to the Facility. It also left open the opportunity for Mrs. Eldridge to revoke the agreement within thirty days after signing with no adverse impact on Mr. Eldridge and his care. *See Golden Gate Nat'l Senior Care, LLC v. Beavens*, 123 F. Supp. 3d 619, 632 (E.D. Pa. 2015) (finding no procedural unconscionability where the signatory had the ability to revoke the arbitration agreement within thirty days of execution). The DRP Agreement, like the agreement in *Beavens*, contains a revocation clause on the first page: "YOUR PARTICIPATION IN DRP IS VOLUNTARY. . . . THIS AGREEMENT MAY BE REVOKED WITHIN THIRTY (30) DAYS . . . . A DECISION TO REVOKE THIS AGREEMENT WILL IN NO WAY ADVERSELY AFFECT THE RESIDENT'S STATUS AT THE FACILITY." [DRP Agreement, Ex. 2, ECF 12-4 at p. 1]. Here, Mrs. Eldridge was not deprived of a meaningful choice regarding her options to elect or decline to participate in DRP. As such, the DRP Agreement is not a contract of adhesion and, therefore, is not procedurally unconscionable.

Because this Court has concluded the DRP Agreement is not procedurally unconscionable, it need not determine whether it is substantively unconscionable. *See Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3d Cir. 2008) ("Because we have concluded that the arbitration agreement here was not procedurally unconscionable and reverse on that basis, we need not decide whether the District Court's decision as to substantive unconscionability was correct."). The DRP Agreement is, therefore, a valid and enforceable contract.

### *Enforceability Against Mrs. Eldridge*

Having determined that the DRP Agreement is a valid and enforceable contract, this Court must now address whether Mrs. Eldridge is bound by its terms. Broomall contends that Mrs.

Eldridge, as the Administratrix of Mr. Eldridge's Estate, is bound because she signed the contract on Mr. Eldridge's behalf. Courts have repeatedly compelled arbitration of claims on behalf of a decedent when the decedent's family member, acting under power of attorney, signed an arbitration agreement and later brought claims against the nursing home on behalf of the decedent. *See, e.g.*, *Beavens*, 123 F. Supp. 3d 619; *Golden Gate Nat'l Senior Care, LLC v. Sulpizio*, 2016 WL 1271333 (M.D. Pa. 2016).

There is no dispute that Mrs. Eldridge signed various agreements, including the DRP Agreement, pursuant to Mr. Eldridge's power of attorney, which gave her the authority to, *inter alia*, "commence, prosecute, discontinue or defend all actions or other legal proceedings . . . [and] to settle, compromise, or *subject to arbitration* any debt, demand or other right or matter due to me concerning my estate as my Agent." [Power of Attorney, Ex. 3, ECF 12-5 at p. 4] (emphasis added). The signature page of the DRP Agreement indicates, "I am the spouse, responsible party, legal guardian, or power of attorney of the resident and have the authority to sign the agreement *on his/her behalf*." [DRP Agreement, Ex. 2, ECF 12-4 at p. 7] (emphasis added). Mrs. Eldridge signed her name on the line designated for the signature of a "Legal Representative or Family Member as authorized by State law." [*Id.*]. Furthermore, the DRP Agreement defines "parties" as including "the resident, any and all family members who would have a right to bring a claim in state court on behalf of the resident or the resident's estate, a legal representative, including a power of attorney . . . ." [*Id.* at p. 2]. Having signed the agreement as Mr. Eldridge's agent pursuant to the power of attorney, Mrs. Eldridge is bound as the Administratrix of Mr. Eldridge's Estate to arbitrate claims brought on his behalf.[10]

---

[10] Broomall also argues Mrs. Eldridge is bound by the DRP Agreement under the doctrines of third-party beneficiary and equitable estoppel. Because this Court finds that Mr. Eldridge was a party to the

**CONCLUSION**

For the foregoing reasons, Broomall's motion to compel arbitration of Mrs. Eldridge's survival claims on behalf of her husband is granted, and Mrs. Eldridge's motion to dismiss is denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

Agreement executed by Mrs. Eldridge as his agent, and thus that the Agreement binds Mrs. Eldridge as the Administratrix of his estate, this Court need not resolve Broomall's additional arguments.